UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TONYIA K. PENDER, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   Civil Action No. 3:23-cv-166 |
| | ) |
| VIRGINIA DEPARTMENT OF | ) |
| BEHAVIORAL HEALTH AND | ) |
| DEVELOPMENTAL SERVICES, | ) |
| | ) |
| and | ) |
| | ) |
| COMMISSIONER NELSON SMITH, | ) |
| | ) |
| and | ) |
| | ) |
| KIMBERLY FRAZIER | ) |
| | ) |
|     Defendants | ) |

## COMPLAINT

COMES NOW the Plaintiff, Tonyia K. Pender, by counsel, and for her Complaint against the Defendants, Virginia Department of Behavioral Health and Developmental Services ("DBHDS") and its Commissioner, Nelson Smith ("Smith"), and its Human Resources Director, Kimberly Frazier ("Frazier"), alleges as follows:

### NATURE OF CLAIMS

1. Plaintiff Tonyia K. Pender ("Pender" or "Plaintiff") is a disabled person who applied for employment with Hiram Davis Medical Center ("the Medical Center") and was hired on March 10, 2022. When Pender came to the Medical Center's offices to sign personnel documents on March 23, 2022, a Human Resources employee

1

recognized her and realized that Pender had worked for the Medical Center before. Pender had been injured on the job, become disabled, and applied for and received workers' compensation and long-term disability benefits. The Medical Center then terminated Pender because of her disability.

2. This is a civil action under Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), against Defendant DBHDS for failure to provide Plaintiff reasonable accommodations and for discriminating against Plaintiff because of her disability or her record of a disability. Defendant Commissioner Nelson Smith is the Chief Officer of the DBHDS and is sued herein in his official capacity for injunctive and declarative relief only, under the holding of *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny, for an ongoing violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter the "ADA"). Pender further seeks damages from Defendant Frazier for her unlawful termination, which was done in violation of Virginia policy, under the holding of *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), and its progeny.

3. Plaintiff seeks backpay, reinstatement (or front pay), compensatory, statutory, and liquidated damages, declaratory judgment, injunctive relief, and costs and attorney's fees against Defendant DBHDS to redress unlawful discriminatory practices during her employment, all done in violation of Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

4. Plaintiff seeks prospective injunctive relief against Defendant Commissioner Smith for ongoing violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

5. Plaintiff seeks compensatory and punitive damages, declaratory judgment, injunctive relief, and costs and attorney's fees against Defendant Frazier to redress unlawful practices in violation of Virginia policy under Virginia common law.

**JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION**

6. This Court has original jurisdiction over Counts I and II in this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117 (a) because each is an action arising under the laws of the United States. This Court has original jurisdiction over Count III under 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over state law claims. The jurisdiction of this Court is invoked to secure protection against and redress the deprivation of rights guaranteed by state and federal laws, which rights provide for compensatory relief and other relief for illegal wage and employment practices.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district and the acts complained of occurred within the jurisdiction of the United States District Court for the Eastern District of Virginia.

8. Pender filed a timely charge alleging discrimination on the basis of disability with the United States Equal Employment Opportunity Commission

(EEOC) on or about May 12, 2022. On February 7, 2023, the U.S. Department of Justice issued a Notice of Right to Sue. Plaintiff filed her Complaint within 90 days of receipt of the Right-to-Sue letter.

## PARTIES

9. Pender is a female U.S. citizen and resident of North Dinwiddie, Virginia. At all times relevant to the matters alleged herein, Pender was a qualified individual with a disability within the meaning of the Rehabilitation Act and within the meaning of the ADAAA pursuant to 42 U.S.C. § 12111(4). The Medical Center made an offer of employment to Pender on March 10, 2022, which Pender accepted. Pender was employed with the Medical Center as an Admissions and Discharge Coordinator between March 23, 2022, and March 30, 2022, when the Medical Center rescinded its offer of employment.

10. Defendant Virginia Department of Behavioral Health and Developmental Services ("DBHDS") is a state agency and arm of the Commonwealth of Virginia that operates 12 inpatient facilities, among them Hiram Davis Medical Center, a 94-bed medical facility located in Petersburg, Virginia. DBHDS is an "employer" as defined in 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADAAA. DBHDS receives federal funding and is therefore a proper Defendant under the Rehabilitation Act.

11. Defendant Smith was appointed as the 17th Commissioner of DBHDS in early 2022. He is the Chief Officer of the DBHDS and is sued herein in his official capacity only.

12. Defendant Frazier is the Human Resources Director at Hiram Davis Medical Center. She has been in this position since December 2018. As Human Resources Director, Frazier manages the daily Human Resource department operations by providing direction, leadership and expertise in all areas of human resources, and by developing, recommending and implementing human resource management policies, practices, and compliance measures. Frazier also provides guidance to management on a wide variety of human resource issues. Upon information and belief, Frazier either decided or advised management in its decision not to hire Pender after discovering Pender's disabilities.

## FACTS

13. Pender incorporates the allegations of the preceding paragraphs as though fully set forth here.

14. All of the acts of the Defendant DBHDS's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant DBHDS.

**The Plaintiff Was Disabled and Had a Record of Disability Since January 5, 2017.**

15. In 2016 and 2017, Pender was employed with the Medical Center as a Licensed Practical Nurse (LPN).

16. Among the requirements for her position as LPN, Pender had to demonstrate the "[a]bility to carry out nursing care procedures including the physical ability to turn, bend & lift helpless patients without restrictions."

5

17. Pender began working as an LPN for the Medical Center on or about December 10, 2016.

18. On or about January 5, 2017, Pender was injured on the job when a patient fell on her, and she became disabled. Due to her injuries, Pender was out of work from January 6 through March 7, 2017.

19. She returned to the Medical Center on March 8, 2017, and was placed on light duty.

20. Pender remained on light duty until June 6, 2017, when she was placed on short-term disability until July 6, 2017.

21. On July 7, 2017, Pender was placed on long-term disability.

22. On January 5, 2022, Pender, the Medical Center, and the Commonwealth of Virginia, presented to the Virginia Workers' Compensation Commission a Petition seeking approval of a settlement. The Virginia Workers' Compensation Commission issued an Order approving the terms of the settlement. Under the terms of the settlement and Order, Pender terminated and extinguished her rights to compensation arising out of her work injury on January 5, 2017 under the Workers' Compensation Laws of the Commonwealth of Virginia against the Medical Center and the Commonwealth of Virginia.

23. Pender was still on long-term disability when she applied for employment with the Medical Center in the spring of 2022.

**The Plaintiff Applied For Employment And Was Hired By The Medical Center.**

24. In the spring of 2022, Pender applied for an open position with the Medical Center as an Admissions and Discharge Coordinator. The position was a desk job, and Pender was fully qualified for the job.

25. On March 10, 2022, the Center offered Pender the job as Admissions and Discharge Coordinator.

26. Kristen Hicks, Human Resource Analyst for the Medical Center, emailed Pender and sent her an offer letter on March 10, 2022, and asked her to "report to Hiram Davis Medical Center on Wednesday, March 23, 2022 at 11:00 to complete necessary paperwork and background screening."

27. Pender was excited about this new position and accepted the offer.

28. Pender's essential job functions included coordinating the admissions process of new patients, as well as the discharge procedures of patients, with patients, families and staff.

29. According to the written Employee Work Profile (EWP) Role Description issued by the Commonwealth of Virginia, the position required skills to "communicate effectively with DBHDS facilities, Central Office, families, Community Service Boards (CSBs), and private providers." Pender possessed these required communication skills.

30. As Admissions and Discharge Coordinator Pender was to "play an integral role in facilitating discussion in team conferences, ensuring the team

7

conference is organized, and documenting appropriately." Pender possessed these required skills.

31. According to the written EWP, the position also required "excellent oral and written communication skills and requires someone with a positive attitude, who is friendly and comforting and must be able to interact with others with ease." Pender possessed these required communication skills.

32. "This position must be able to work interactively with all clinical disciplines and establish effective interpersonal relationships with staff." Pender possessed these required skills.

33. According to the written EWP, "Computer skills, including comfort with using Microsoft Office Suite, are required." Pender possessed these required skills.

34. According to the written EWP, "Close attention to detail and good organizational skills are required." Pender possessed these required organizational skills.

35. Pender was qualified to do this job and remained qualified and capable to do this job with the Medical Center.

**Defendants' HR Personnel Recognized and Terminated Plaintiff.**

36. On Wednesday, March 23, 2022 at 11:00 a.m. Pender drove to the Medical Center and went to the Human Resources office to complete the necessary paperwork.

37. Pender met with Kristen Hicks to complete the necessary paperwork, including background check and drug screening.

38. Pender left the main hospital and drove to the administrative building to get her photo taken for her employee badge.

39. While in the administrative building, Pender saw Sylvia Wyatt, who works in the Medical Center's Human Resources office.

40. Ms. Wyatt previously handled Pender's worker's compensation and long-term disability claims. Ms. Wyatt recognized Pender as a previous employee.

**Defendants Rescind Their Offer Of Employment.**

41. On March 24, 2022, Pender received a phone call from Ms. Hicks. Ms. Hicks stated that she had learned that Pender was on long-term disability.

42. Ms. Hicks then told Pender that she needed to come to work without any restrictions.

43. Ms. Hicks further stated that Pender needed to get a doctor's note stating that she could work without any restrictions at all.

44. Pender advised Ms. Hicks that she would need at least two weeks to obtain such a note from her doctor.

45. Ms. Hicks agreed that the Medical Center would allow Pender up to two weeks to get the doctor's note.

46. On March 25, 2022, Pender emailed Ms. Hicks and requested a reasonable accommodation pursuant to the Americans with Disabilities Act and the Rehabilitation Act of 1973.

47. Defendants did not respond to Pender's request and never engaged in any dialogue with Pender about her request for a reasonable accommodation.

9

48. On March 25, 2022, Pender received a voicemail from Defendant Frazier.

49. Pender returned Defendant Frazier's call and during the phone call Defendant Frazier stated that Pender could not work and be on long term disability at the same time.

50. Pender informed Defendant Frazier that she understood that, but that she was able to and wanted to do this particular job.

51. Defendant Frazier then told Pender that she would have to come to work with no restrictions.

52. On March 30, 2022, Pender received a voicemail from Ms. Hicks, informing her that the Medical Center had rescinded the offer of employment.

53. Pender had already accepted the offer of employment on March 23, 2022.

54. Defendants refused to employ Pender and failed to accommodate her and never engaged in any dialogue with Pender about her request for a reasonable accommodation.

### COUNT ONE
### Wrongful Termination in Violation of Public Policy (VA Values Act)
### (Against Defendant Frazier only)

55. The foregoing allegations are incorporated as if re-alleged herein.

56. Section 2.2-3900 of the Code of Virginia (the Virginia Human Rights Act) evinces and is based on Virginia's public policy to "safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of … disability…."

57. The public policy underlying Section 2.2-3902 prohibits "[c]onduct that violates any Virginia or federal statute or regulation governing discrimination on the basis of … disability…" as "an unlawful discriminatory practice under this chapter."

58. The termination of Pender's employment violates the public policy underlying the Virginia Human Rights Act, Va. Code § 2.2-3902.

59. Virginia common law provides for a claim for wrongful discharge in violation of public policy under the Virginia Human Rights Act.

60. Defendant Frazier withdrew the Medical Center's offer of employment and terminated Pender's employment after discovering that Pender was disabled, had a record of disability and requested reasonable accommodations for her disability.

61. Defendant Frazier discriminated against Pender and recommended her termination because of her disability and request for reasonable accommodations.

62. The Virginia common law retaliatory discharge remedy is in addition to any corollary protections provided by statute addressing the same set of operative facts.

63. Defendant Frazier's conduct alleged herein was undertaken with malice, ill will and spite or, alternatively, undertaken with conscious and/or reckless disregard for the Plaintiff's rights.

64. Pender has been injured as a direct and proximate result of Defendant Frazier's wrongful discharge of her employment. These injuries include lost wages, lost bonuses, lost employee benefits, lost raises, diminished earning capacity, lost

career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, and other compensatory damages in an amount to be determined by a jury and the Court.

## COUNT TWO
### Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)
### (Against Defendants DBHDS only)

65. The foregoing allegations are incorporated as if re-alleged herein.

66. Defendant DBHDS has received and continues to receive funds from the federal government.

67. Defendant DBHDS is an employer pursuant to the Rehabilitation Act of 1973. Defendant DBHDS offered employment to Pender on March 23, 2022.

68. On March 23, 2022, Pender became a salaried employee of Defendant DBHDS with a physical impairment that substantially limits one or more major life activities. Pender has suffered and continues to suffer from severe pain in her knee due to a work-related injury, when a patient fell on her, necessitating surgery and disabling her long-term, substantially limiting her in the major life activities of standing, walking, kneeling, squatting, and lifting.

69. Pender is and has been a qualified individual with a disability as those terms are defined by the Rehabilitation Act. Pender developed her health issues in January of 2017.

70. Pender requested a reasonable accommodation for her disability on March 24, 2022.

71. Pender attempted to engage in, and invited Defendant DBHD staff to participate in, a dialogue concerning her request for accommodations with DBHDS' Human Resources Department. However, Defendant DBHDS did not schedule a meeting to discuss her request and instead terminated her employment.

72. Defendant DBHDS' actions were done in willful violation of Plaintiff's rights under the Rehabilitation Act.

73. As a direct and proximate result of Defendant DBHDS' actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including lost wages, embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, litigation expense including attorney's fees, medical expense, consequential damages and other injury.

**COUNT THREE**
**ADA – 42 U.S.C. 12101 *et seq.***
**Disparate Treatment and Failure to Accommodate**
**(Against Defendant Nelson Smith in his official capacity only)**

74. The foregoing allegations are incorporated as if re-alleged herein.

75. Defendant Smith was appointed as the 17th Commissioner of DBHDS in January of 2022. Defendant Smith is the Chief Officer of the DBHDS and is sued herein in his official capacity for injunctive and declarative relief only, under the holding of *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny, for an ongoing violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter the "ADA").

76. Defendant DBHDS has received and continues to receive funds from the federal government.

77.     Defendant DBHDS is an employer pursuant to the Americans with Disabilities. Defendant DBHDS employed Pender between March 23 and March 30, 2022.

78.     Pender was a salaried employee of Defendant DBHDS with a physical impairment that substantially limits one or more major life activities. Pender suffers from severe pain in her knee due to a work-related injury, when a patient fell on her, necessitating surgery and disabling her long-term, substantially limiting her in the major life activities of standing, walking, kneeling, squatting, and lifting.

79.     Pender is and has been a qualified individual with a disability as those terms are defined by the Americans with Disabilities Act. Pender developed her health issues beginning in January of 2017.

80.     Pender requested a reasonable accommodation for her disability on March 24, 2022.

81.     Pender attempted a dialogue concerning her request for accommodations with DBHDS's Human Resources Department. However, Defendant DBHDS did not schedule a meeting to discuss her request and instead terminated her employment.

82.     Defendant DBHDS's actions were done in willful violation of Plaintiff's rights under the Americans with Disabilities Act.

83.     As a direct and proximate result of Defendant DBHDS's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury,

14

entitling her to injunctive and declaratory relief, litigation expense including reasonable attorney's fees, and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against the Defendants on the above-stated counts, and that in addition this Court issue an Order granting the following:

(i) For appropriate equitable relief against Defendant DBHDS as allowed by the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and including the enjoining and permanent restraining of these violations, and direction to Defendants DHBDS and Nelson Smith to take such affirmative action as is necessary to ensure that the effects of the unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

(ii) Declaring that the acts and practices complained of herein are in violation of the Plaintiff's rights as secured by the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) et seq. and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.;

(iii) Awarding Plaintiff back pay and benefits for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.;

(iv) Awarding that the Plaintiff be reinstated under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), the Americans with Disabilities Act, 42 U.S.C. § 12101 et

seq., or in the alternative in the event that reinstatement is not feasible in light of the level of hostility exhibited by Defendants, for an award of front pay;

(v) For Defendant Frazier's wrongful termination of Plaintiff in violation of Virginia's public policy, an award to Plaintiff of lost wages, lost employee benefits, lost raises, diminished earning capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress;

(vi) Awarding Plaintiff compensatory damages in the amount to be determined by the jury at trial;

(vii) Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because they were required to file suit to enforce their federally protected rights;

(viii) Awarding Plaintiff other appropriate injunctive relief;

(ix) Awarding Plaintiff incidental and consequential damages, reasonable attorney's fees and costs of this action, including expert witness fees; and

(x) Awarding Plaintiff such other and further relief as may be appropriate under the circumstances.

**TRIAL BY JURY IS REQUESTED.**

    Respectfully Submitted,

    TONYIA PENDER

By Counsel

*/s/ Tim Schulte*
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
3 W Cary Street
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [facsimile]
Schulte@scs-work.com
Shelley@scs-work.com

17